IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDIGUS LTD.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>ENDOCHOICE, INC.,<br><br>Defendant/Counterclaimant. | C.A. No. 15-505-LPS-CJB |

**ENDOCHOICE'S JULY 7, 2016 DISCOVERY LETTER BRIEF**

Dated: July 7, 2016


FISH & RICHARDSON, P.C.
Susan Morrison Coletti (# 4690)
Martina Tyreus Hufnal (# 4771)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070
hufnal@fr.com; coletti@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210-1878
Telephone: (617) 542-5070
scherkenbach@fr.com

Todd G. Miller
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
miller@fr.com

Corrin Drakulich
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
drakulich@fr.com

**ATTORNEYS FOR DEFENDANT/COUNTERCLAIMANT ENDOCHOICE, INC.**



Fish & Richardson P.C.
222 Delaware Avenue
17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

302 652 5070 main
302 652 0607 fax

July 7, 2016

**BY CM/ECF FILING**

The Honorable Christopher J. Burke
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801-3555

Re: *Medigus Ltd. v. EndoChoice, Inc.*
C.A. No. 15-505-LPS-CJB

Dear Judge Burke:

EndoChoice writes to seek the Court's assistance with two discovery issues the parties have been unable to informally resolve. We address these in turn.

**Medigus Refuses to Provide Responses to Requests for Admission Nos. 12-17 and Interrogatory No. 5**

EndoChoice seeks substantive responses to its Request for Admission Nos. 12-17 and Interrogatory No. 5. [Exs. 1, 2] The requests for admission ask Medigus to admit whether the post-issuance changes made to a single claim limitation in its asserted U.S. Patent No. 6,997,871 (the "'871 Patent") changed, enlarged, broadened or expanded the scope of asserted claim 1. Medigus has refused to respond to these requests contending, incorrectly, that they "improperly seek[] a legal conclusion and as premature discovery of experts."

By way of background, seven years after the '871 patent issued, Medigus obtained a Certificate of Correction ("CoC") of asserted claim 1. Medigus' filing of the CoC coincided with the successful commercial release by EndoChoice of its Fuse® endoscope. The "correction" changed the original claim limitation "a single continuous shaft including, a sheath, an articulation section attached to a distal end of said **sheath** and, a distal tip attached to a distal end of said articulation section" to "a single continuous shaft including, a sheath, an articulation section attached to a distal end of said **shaft** and, a distal tip attached to a distal end of said articulation section." [Ex. 3 ('871 Patent) at Col. 15, line 1.] The change from "sheath" to "shaft" in this limitation impacts the scope of the limitations in claim 1 that include either "shaft" or "sheath". [*See, e.g.* Ex. 3 ('871 Patent) at Col. 14, line 66 ("a single continuous shaft"); *id*. at Col. 14, line 67 ("a sheath"); *id*. at Col. 14, line 67-Col. 15, line 1 ("an articulation section attached to a distal end of said ~~sheath~~ shaft"); *id*. at Col. 15, line 12 ("said second location located either on a proximal end of said articulation section or on the sheath of said endoscope")].

The validity of Medigus' CoC has, from the outset of this case, been a central disputed issue. To determine Medigus' position on the impact of the "correction," EndoChoice propounded the requests




for admission. Medigus' position on this issue is necessary not only to focus the claim construction briefing, but also to direct discovery related to Medigus' infringement positions and EndoChoice's defenses and counterclaims. While it should be beyond dispute that the scope of the asserted claims was changed by the CoC because the words "sheath" and "shaft" refer to different components of the claimed endoscope, Medigus refuses to reveal its position. Medigus apparently favors leaving the scope of its asserted claims ambiguous for as long as possible, including through the claim construction process. That approach exemplifies the "shifting sands" approach to patent litigation that the Scheduling Order seeks to preclude.

With regard to the claim construction process, the briefing schedule provides for simultaneous opening and responsive briefing and specifically excludes reply briefs without leave of the Court. Without knowing Medigus' definitive position on the impact of the CoC on the scope of the asserted claims, EndoChoice will be left to guess at what that position is in its opening claim construction brief due on August 15. If, as expected, Medigus does not provide pre- and post-CoC constructions for the impacted terms in its opening brief, the first time they will address the issue is in their responsive brief (if then). Consequently, EndoChoice may be deprived of the opportunity to respond to whatever position Medigus ultimately decides to take. If, on the other hand, the Court orders Medigus to promptly and clearly disclose its position on the impact of the "correction" by providing fulsome responses to EndoChoice's RFAs and interrogatory No. 5, EndoChoice will be able to directly address Medigus' position in its opening claim construction brief so that this central issue may be thoroughly briefed and addressed for the Court.

Beyond the immediacy of the claim construction issue, Medigus' position on the impact of its CoC on the scope of the asserted claims—and the facts underpinning that position—permeate nearly every issue in this case, including infringement, invalidity, inequitable conduct, unclean hands, and Medigus' bad faith assertion of the patent in suit. Medigus should not be permitted to avoid the issue by denying EndoChoice highly relevant fact discovery to which it is entitled.

FRCP 36 (a) provides in relevant part, "Scope. A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) ***facts, the application of law to fact, or opinions about either***." EndoChoice's requests fit squarely within this permissible subject matter and fulfill the purpose of Rule 26, which is to streamline issues and narrow the facts in dispute for trial. In submitting the Petition for CoC on June 11, 2013, Medigus' patent attorney represented to the Patent Office: "This proposed amendment does not contain new matter since the proposed amendment requires no new language and ***does not appear to alter the breadth and scope of the claimed invention*** since it appears obvious that the articulation section must be attached to the shaft, and not the sheath." [Ex. 4 MedigusDE0000761-762 at 762 (emphasis added)]. EndoChoice's requests merely ask Medigus to embrace or reject the factual representations made to the United States Patent and Trademark Office by its own patent attorney in requesting the "correction." While it is true that Medigus' responses to these requests may have an impact on claim construction, infringement, invalidity of the asserted claims, invalidity of the CoC, inequitable conduct, unclean hands, and EndoChoice's bad faith patent assertion counterclaim, the requests themselves are not seeking expert opinion, claim construction, or pure legal conclusions as Medigus contends.



To the extent the Court accepts Medigus' position that EndoChoice's requests rely on claim construction, legal conclusions, or expert opinions, the inquiry should not end there. "*Markman* should not be used as an excuse to evade the responsibility to fully and fairly respond to requests for admission, using qualifications as necessary, rather than seeking 'to evade disclosure by quibbling and objection.'" *Keithley v. The Home Store.com, Inc*., 2008 WL 2024977, at *3 (N.D. Cal. May 8, 2008) (quoting *Marchaud v. Mercy Medical Center*, 22 F.3d 933, 938 (9th Cir. 1994)). Instead, because Medigus has now taken a position on the meaning of the claim limitation "sheath" (a "rigid, semi-rigid or flexible outer covering") and presumably has a corresponding position on the meaning of the claim limitation "shaft," Medigus should be ordered to respond promptly to EndoChoice's requests for admission based on those positions. [Ex. 5 (July 1, 2016 letter re claim limitations)]

Finally, and for the same reasons, Medigus should be ordered to provide a fulsome response to EndoChoice's interrogatory No. 5, which seeks an explanation of the facts underlying the filing of the CoC, including how the correction made to claim 1 did not alter the breadth and scope of the claimed invention. [Ex. 6 (Medigus Response to EndoChoice's First Set of Interrogatories)].

**Medigus Refuses to Provide Responses to Interrogatories Nos. 8-16**

The second dispute involves Medigus' refusal to provide substantive responses to EndoChoice's interrogatory Nos. 8-16. EndoChoice propounded interrogatory Nos. 1-15 to Medigus on January 25, 2016. [Ex. 2] On February 29, Medigus objected to interrogatory Nos. 1-5 on the ground that they contained multiple discrete subparts, provided cursory responses to interrogatories 1-7[1] and refused to provide any responses to interrogatories 8-15 on the ground that they "exceed[] the maximum number of interrogatories permitted under Fed. R. Civ. P. 33 and the Scheduling Order of the Court." [Ex. 6] Ironically, on the same day that it responded and objected to EndoChoice's interrogatories, Medigus served its own first set of interrogatories, each of which contained the same type of inquiry that Medigus objected to as discrete subparts when propounded by EndoChoice. [Ex. 7] EndoChoice, nonetheless, provided a fulsome response to Medigus' interrogatories to properly comply with its discovery obligations. [Ex. 8] EndoChoice propounded an additional interrogatory No. 16 on February 26. On March 30, Medigus refused to provide a response, again contending that EndoChoice had exceeded the maximum number of interrogatories under Rule 33. [Ex. 9]

In an effort to avoid becoming mired in a dispute that would further delay discovery, EndoChoice served Medigus with revised interrogatories that were identical to its original interrogatories but deleted the portions that Medigus alleged to be discrete subparts. [Exs. 10, 11.] A comparison of the original and revised interrogatories is provided in Appendix A. To further address Medigus' complaints, EndoChoice split two of its original interrogatories into separate interrogatories (original interrogatory No. 2 became revised interrogatories Nos. 2-3, and original interrogatory No. 16 became revised interrogatory nos. 17-19) (denoted with blue and green text in Appendix A). Despite these efforts, Medigus still refused to respond to EndoChoice's interrogatories. In fact, Medigus

---

[1] While EndoChoice believes Medigus' responses to interrogatory nos. 1-7 are deficient and that such deficiencies may ultimately need to be addressed by the Court, those deficiencies (with the exception of interrogatory No. 5, which is addressed in the first section of this letter) are being addressed through the meet and confer process and are not yet ripe for the Court's consideration.




took the position that EndoChoice's revised interrogatories should be counted in *addition* to, rather than replacements of, its original interrogatories. [Exs. 12, 13.]

Parties should, and frequently do, modify interrogatories to informally resolve disputes over breadth, precision, and use of subparts. Medigus appears to acknowledges as much in its own interrogatories, which instruct that "[f]or any interrogatory to which EndoChoice intends to object in whole or in part as overbroad, vague or unduly burdensome, EndoChoice is directed to have a meet and confer session prior to stating such objections in an effort to give Medigus an opportunity to clarify or narrow the interrogatory and obtain a substantive response without a need for court intervention." [Ex. 7 at p. 4] EndoChoice had hoped its approach would avoid the need for the Court to engage in a dispute over subparts. Unfortunately, that effort failed.

In assessing whether participial phrases of an interrogatory are "discrete subparts," courts have instructed against taking a draconian approach and have "instead attempted to formulate more conceptual approaches, asking whether one question is subsumed and related to another or whether each question can stand alone and be answered irrespective of the answer to the others." *Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004) (citing *Kendall v. GES Exposition Services,* 174 F.R.D. 684 (D. Nev. 1997)). Even the case law Medigus identified to EndoChoice in support of its position explains that "[d]etermining whether an interrogatory counts as a separate question requires a pragmatic approach." *Waterbury v. Scribner*, 2008 WL 2018432, at *2 (E.D. Cal. May 8, 2008). Subparts requesting annual tallies of events and details about those events over multiple years, for example, have been found to constitute a single interrogatory where such subparts are "logically and factually subsumed within and necessarily related to the primary question." *Thomas v. Yates*, 2009 WL 3273280, at *2-3 (E.D. Cal. Oct. 9, 2009) (counting interrogatory 2, which contained subparts (a)(i) through (a)(iii), as a single interrogatory because "the answer to the first portion of Interrogatory No. 2 is simply the sum of the answers to each of the inquiries contained in subpart (a).").

Attached Appendix A shows that what Medigus contends are discrete interrogatory subparts are actually subsidiary to the primary call of the interrogatory and provide only exemplary aspects of a fulsome response. For example, Interrogatory Nos. 1 and 3 seek a description of Medigus' development efforts. The participial parts ask when development started and when the invention was made, tested, and used. These are not discrete subparts; they are simply guidance as to the categories of information EndoChoice is seeking through the primary call of the interrogatory. *See New Park Ent. LLC v. Elec. Factory Concerts, Inc.*, 2000 WL62315 at *4 (E.D. Pa 2000) ("The court does not view subsidiary instructions to the interrogatories as propounding additional interrogatories, but merely specifying to the defendants the type of information plaintiff is eliciting in the interrogatories. Defendants' Rule 33(a) objection is therefore overruled.").

Accordingly, EndoChoice respectfully requests that the Court order Medigus to promptly answer EndoChoice's original interrogatory Nos. 8-16. Alternatively, EndoChoice requests that Medigus be ordered to answer revised interrogatory Nos. 9-19, which are substantively identical to original interrogatory nos. 8-16 but exclude the participial phrases that provide guidance as to the types of information being elicited in the primary call of the interrogatory.




Respectfully Submitted,

/s/ Susan Morrison Coletti

Susan Morrison Coletti (# 4690)

SMC/bar

cc: Clerk of Court
All Counsel of Record – by electronic email