## Appendix A. Comparison of EndoChoice Original Interrogatory Nos. 1-16 to Revised Interrogatory Nos. 1-19

| ORIGINAL | REVISED | SUBSTANTIVE COMPONENT OF MEDIGUS RESPONSE TO ORIGINAL |
|---|---|---|
| 1. Describe in detail the development efforts that Relate to the Alleged Medigus Inventions, Including: (a) the date on which each Alleged Medigus Invention was first described in writing; (b) the date on which each Alleged Medigus Invention was first manufactured; (c) the date on which each Alleged Medigus Invention was first tested; and (d) the date on which each Alleged Medigus Invention was first used to perform a medical procedure in: (1) an animal, (2) a human cadaver, and (3) a live human patient. | 1. Describe in detail the development efforts that Relate to the Alleged Medigus Inventions. | (a) Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant Federal Rule of Civil Procedure 33(d). (b) No commercially-released product manufactured by Medigus embodies any claim of the '871 Patent, but Medigus is still investigating non-commercial products. (c) No commercially-released product made by Medigus that embodies any claim of the '871 Patent has been tested by Medigus, but Medigus is still investigating noncommercial products. (d) No commercially-released product made by Medigus that embodies any claim of the '871 Patent has been used by Medigus to perform a medical procedure on an animal, a human cadaver, or a live human patient, but Medigus is still investigating noncommercial products. |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| 2.   Identify all Alleged Medigus Embodying Products (by product name, project name, internal code name, model designation, product number, part number, trademark or trade name, and any other unique designation or identifier), and for each such Alleged Medigus Embodying Product: (i) state which claim(s) of the '871 Patent is embodied by each such product; (ii) explain, using a claim chart or equivalently detailed method, specifically how each such product meets each limitation of each claim; (iii) identify the person or persons most knowledgeable about the structure and function of each such product; and (iv) state the date when Medigus first began making, using, selling, and/or offering for sale of each such product. | 2. Identify all Alleged Medigus Embodying Products (by product name, project name, internal code name, model designation, product number, part number, trademark or trade name, and any other unique designation or identifier).<br><br>3. For each Alleged Medigus Embodying Product identified in the response to Revised Interrogatory No. 2, state which claim(s) of the '871 Patent is embodied by each such product and explain, using a claim chart or equivalently detailed method, specifically how each such product meets each limitation of each claim. | (i) No commercially-released product made by Medigus embodies any claim of the '871 Patent.<br>(ii) No commercially-released product made by Medigus embodies any claim of the '871 Patent.<br>(iii) No commercially-released product made by Medigus embodies any claim of the '871 Patent.<br>(iv) No commercially-released product made by Medigus embodies any claim of the '871 Patent. |
| 3.   Describe in detail the development efforts that Relate to any and all Alleged Medigus Embodying Products, Including: (a) the date on which each Alleged Medigus Embodying Product was first described in writing; (b) the date on which each Alleged Medigus Embodying Product was first manufactured; (c) the date on which each Alleged Medigus Embodying Product was first tested; and (d) the date on which each Alleged Medigus Embodying Productwas first used to perform a medical procedure in: (1) an animal, (2) a human cadaver, and (3) alive human patient. | 4.   Describe in detail the development efforts that Relate to any and all Alleged Medigus Embodying Products. | (a) No commercially-released product made by Medigus embodies any claim of the '871 Patent.<br>(b) No commercially-released product made by Medigus embodies any claim of the '871 Patent.<br>(c) No commercially-released product made by Medigus embodies any claim of the '871 Patent.<br>(d) No commercially-released product made by Medigus embodies any claim of the '871 Patent. |
| 4.   For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the efforts and acts by those involved to conceive of, reduce to practice, and diligently reduce to practice each claim, Including: | 5.   For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the efforts and acts by those involved to conceive of, reduce to practice, and diligently reduce to practice each claim. | (i) Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant Federal Rule of Civil Procedure 33(d).<br>(ii) The claims of the '871 patent were invented by the named inventors. Medigus does not currently have further information responsive to |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| (i) stating the dates of conception and reduction to practice for each claim; (ii) identifying each person who conceived of each claim; (iii) identifying each person who actually (as opposed to constructively) reduced each claim to practice; and (iv) identifying all Documents that evidence the alleged conception, reduction to practice, and diligence in reducing to practice each claim. | | this subpart of this interrogatory. However, Medgius' investigation is still ongoing, and Medigus will supplement if responsive information and/or documents are located. (iii) Medigus is still investigating whether the '871 Patent was actually reduced to practice prior to its constructive reduction to practice. If actual reduction to practice occurred prior its constructive reduction to practice, Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant Federal Rule of Civil Procedure 33(d). (iv) Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d). |
| 5. <span style="color:red">Explain in detail the facts and circumstances surrounding Medigus' Petition for Certificate of Correction</span>, Including (i) when and how Medigus came to believe "that the examiner at the USPTO and the Applicant made a mutual clerical error by not amending 'distal end of said sheath' to --distal end of said shaft-- when it added 'a single continuous shaft including' phrase to claim 1 to obtain the allowance [of the '871 Patent]"; (ii) why Medigus did not recognize the supposed mutual clerical error (identified in the Petition for Certificate of Correction filed for the '871 Patent) at any time in:<br>   a.  2005<br>   b.  2006<br>   c.  2007<br>   d.  2008<br>   e.  2009<br>   f.  2010<br>   g.  2011 | 6. Explain in detail the facts and circumstances surrounding Medigus' Petition for Certificate of Correction. | (i) Elazar Sonnenschein discovered the error upon review of the claims of his patent on or around June 2013.<br>(ii)<br>(a) The error was not discovered in 2005 because the event described in subpart (i) had yet to occur.<br>(b) The error was not discovered in 2006 because the event described in subpart (i) had yet to occur.<br>(c) The error was not discovered in 2007 because the event described in subpart (i) had yet to occur.<br>(d) The error was not discovered in 2008 because the event described in subpart (i) had yet to occur.<br>(e) The error was not discovered in 2009 because the event described in subpart (i) had yet to occur.<br>(f) The error was not discovered in 2010 because the event described in subpart (i) had yet to occur.<br>(g) The error was not discovered in 2011 because the event described in subpart (i) had yet to occur.<br>(h) The error was not discovered in 2012 because the event described in subpart (i) had yet to occur.<br>==(iii) Medigus objects to subpart (iii) as premature insofar as it seeks Medigus' claim construction of== |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| h.  2012; (iii) how the supposed mutual clerical error (identified in the Petition for Certificate of Correction filed for the '871 Patent) is confirmed when the specification of the '871 Patent is evaluated; (iv) how the correction made to claim 1 of the '871 Patent does not alter the breadth and scope of the claimed invention; and (v) the identity of each person who participated in any significant way (e.g., providing technical input, reviewing or commenting on communications to or from the USPTO, preparing and filing papers in the USPTO) in the preparation and/or prosecution of the Petition for Certificate of Correction filed for the '871 Patent | | the '871 Patent and calling for legal conclusions and expert testimony. (iv) Medigus objects to subpart (iv) as premature insofar as it seeks Medigus' claim construction of the '871 Patent and calling for legal conclusions and expert testimony. (v) Kevin McCarthy, Kfir Luzzatto and Elazar Sonnenschien may have participated in the prosecution of the certificate of correction for the '871 Patent. |
| 6.  For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the factual and legal bases to support such contention, Including (a) identifying each claim of the '871 Patent that Medigus contends EndoChoice has infringed, indicating whether the purported infringement is direct, induced or contributory; (b) stating whether Medigus contends the identified claims are infringed literally or under the doctrine of equivalents and describe the factual and legal bases for such contention; (c) providing a claim chart that compares each Accused EndoChoice Product to each and every limitation of each allegedly infringed claim and providing Medigus' proposed construction for each limitation Medigus contends should not be afforded its plain meaning; and (d) identifying any Document that Medigus contends | 7.  For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the factual and legal bases to support such contention, Including (a) identifying each claim of the '871 Patent that Medigus contends EndoChoice has infringed, indicating whether the purported infringement is direct, induced or contributory; (b) stating whether Medigus contends the identified claims are infringed literally or under the doctrine of equivalents and describe the factual and legal bases for such contention; (c) providing a claim chart that compares each Accused EndoChoice Product to each and every limitation of each allegedly infringed claim and providing Medigus' proposed construction for each limitation Medigus contends should not be afforded its plain meaning; and (d) identifying any Document that Medigus | Medigus incorporates by reference Plaintiff and Counterclaim-Defendants' Initial Disclosures Under Section 4(c) of the Delaware Default Standard for Discovery, served February 25, 2016. |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| supports any contentions described in its answer to this Interrogatory. | contends supports any contentions described in its answer to this Interrogatory. | |
| 7. Describe the legal and factual bases for Medigus' contention that EndoChoice has willfully infringed the '871 Patent, Including identifying all Documents and facts that Medigus contends supports its contention and identifying the three individuals most knowledgeable about such contentions. | 8. Describe the legal and factual bases for Medigus' contention that EndoChoice has willfully infringed the '871 Patent. | EndoChoice and its officers had specific knowledge about the '871 Patent and EndoChoice's infringement thereof for years prior to the Present Litigation, and despite the objectively high likelihood EndoChoice's product would infringe the '871 Patent, EndoChoice proceeded to make, use, sell, and offer for sale its infringing FUSE product in the United States. Mr. Elazar Sonnenschein orally communicated to EndoChoice employees that they infringed the patent and written correspondence was provided to EndoChoice advising them of their infringement. At least Ari Levy of EndoChoice was directly informed of EndoChoice's infringement by Mr. Elazar Sonnenschein before the year 2013. At least Douglas Ladd and Yoram Ashery of EndoChoice were directly informed of EndoChoice's infringement by Mr. Elazar Sonnenschein during the years 2013 and/or 2014. Additionally, EndoChoice personnel and officers were informed of EndoChoice's infringement during DDW 2013 and the 2014 JP Morgan Annual Healthcare Conference. Furthermore, EndoChoice had actual notice of the '871 Patent prior to the filing of the Complaint as detailed in the Complaint. Medigus will produce relevant, non-privileged documents responsive to this interrogatory pursuant Federal Rule of Civil Procedure 33(d). |
| 8. Describe in detail any joint development or other collaborative efforts between Medigus (Including by any Medigus employee, agent, consultant or representative) and Peer Medical Ltd. (Including by any Peer Medical employee, agent, consultant or representative) Relating to any | 9. Describe in detail any joint development or other collaborative efforts between Medigus (Including by any Medigus employee, agent, consultant or representative) and Peer Medical Ltd. (Including by any Peer Medical employee, | None. |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| endoscopy product and identify all Documents Relating to such efforts. | agent, consultant or representative) Relating to any endoscopy product. | |
| 9.   Describe in detail when and how Medigus first: (1) became aware of each Accused EndoChoice Product and (2) concluded that each Accused EndoChoice Product infringed a claim of the '871 Patent, Including identifying all Documents Relating to such facts and identifying the three individuals most knowledgeable about such facts. | 10.   Describe in detail when and how Medigus first became aware of each Accused EndoChoice Product and concluded that each Accused EndoChoice Product infringed a claim of the '871 Patent. | None. |
| 10.   For each asserted claim of the '871 Patent, identify and explain each and every advantage of the claimed endoscope over endoscopes described by the Prior Art and each and every problem Medigus contends is solved by the claimed endoscope. | 11.   For each asserted claim of the '871 Patent, identify and explain each and every advantage of the claimed endoscope over endoscopes described by the Prior Art and each and every problem Medigus contends is solved by the claimed endoscope. | None. |
| 11.   Describe in detail Medigus' corporate structure, Including identifying the relationship between Medigus and each of its predecessors, subsidiaries, successors, parents, assigns and affiliates, identifying the officers, directors, board members of each, and describing the ownership interest of Medigus in each. | 12.   Describe in detail Medigus' corporate structure. | None. |
| 12.   Describe in detail any secondary consideration of non-obviousness Medigus contends exists for each asserted claim of the '871 Patent, Including: (i) any long felt but unresolved need for the claimed invention, Including who felt the need and when; (ii) any failure of another to develop the claimed invention, Including who attempted but failed to develop the invention and when; (iii) any | 13.   Describe in detail any and all secondary consideration of non-obviousness Medigus contends exists for each asserted claim of the '871 Patent. | None. |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| commercial success attributable to the claimed invention, Including any licenses to the patent; (iv) any evidence of copying of the claimed invention, Including all persons having knowledge of the alleged copying; (v) whether the claimed invention received any awards or praise in the industry; (vi) any evidence of teaching away from the claimed invention by others; and (vii) any other secondary considerations of non-obviousness on which Medigus intends to rely, and identify all Documents that Medigus contends support its contention and identify the three individuals most knowledgeable about such contentions. | | |
| 13. State whether Medigus is seeking a reasonable royalty, lost profits, or both from EndoChoice for the alleged infringement of the asserted claims of the '871 Patent and provide a detailed explanation of the basis for all damages and other monetary remedies that Medigus is seeking in the Present Litigation, Including (1) the royalty rate and base that Medigus contends is applicable for EndoChoice's alleged use of the '871 Patent and the factual and legal bases for such contentions; and (2) if Medigus alleges lost profits, the amount of such lost profits, the legal and factual bases therefore, Including the profits per unit, costs per unit, allocation of fixed costs compared to variable costs per unit, allocation of overhead, and whether You contend that any other products' sales are convoyed with Medigus' products. | 14. State whether Medigus is seeking a reasonable royalty, lost profits, or both from EndoChoice for the alleged infringement of the asserted claims of the '871 Patent and provide a detailed explanation of the basis for all damages and other monetary remedies that Medigus is seeking in the Present Litigation. | None. |
| 14. Identify all licenses, offers to license, and requests to license any Medigus endoscopy | 15. Describe in detail all licenses, offers to license, and requests to license any Medigus | None. |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

| | | |
|---|---|---|
| product, the date of the offer or request to license, whether the offer or request was accepted or rejected, the date of execution of the license, the terms of the license, and the amount of any royalties or other payments offered, requested and/or agreed upon in connection with any licensing negotiation and/or agreement. | endoscopy product including the date of the offer or request to license, whether the offer or request was accepted or rejected, the date of execution of the license, the terms of the license, and the amount of any royalties or other payments offered, requested and/or agreed upon in connection with any licensing negotiation and/or agreement. | |
| 15.  Identify all Persons who have invested more than $100,000 in Medigus or who currently own more than 1% of Medigus' outstanding common stock. | 16.  Identify all Persons who have invested more than $100,000 in Medigus or who currently own more than 1% of Medigus' outstanding common stock. | None. |
| 16.  For each product, project, or prototype that Medigus has developed since 2000 that is intended for use or used by physicians in the diagnosis or treatment of any gastro-intestinal conditions, Including inspection of the gastro-intestinal tract, detection of polyps, diagnosis and/or treatment of GERD, or use in gastric surgery: (a) provide all names, model numbers and internal names or codes used to identify the product, project, or prototype; (b) identify all substantive changes made to each such product, project or prototype from the time it was first developed until the latter of the present or the time it was discontinued; (c) identify any patents that cover any version of each such product, project, or prototype; (d) identify any such product, project, or prototype that was marked with the '871 Patent number, and (e) identify all Documents Relating to Your response to this interrogatory. | 17.  For each product, project, or prototype that Medigus has developed since 2000 that is intended for use or used by physicians in the diagnosis or treatment of any gastro-intestinal conditions, Including inspection of the gastro-intestinal tract, detection of polyps, diagnosis and/or treatment of GERD, or use in gastric surgery, provide all names, model numbers and internal names or codes used to identify the product, project, or prototype.<br><br>18.  For each product, project, or prototype identified in response to Revised Interrogatory No. 17, identify all substantive changes made to each such product, project or prototype from the time it was first developed until the latter of the present or the time it was discontinued.<br><br>19.  For each product, project, or prototype identified in response to Revised Interrogatory No. 17, identify any patents that cover any version of | None. |

**Appendix A. Comparison of Original Interrogatory Nos. 1-16
to Revised Interrogatory Nos. 1-19**

|  | each such product, project, or prototype and indicate whether each product, project, or prototype was marked with the '871 Patent number. |  |
|---|---|---|