# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDIGUS LTD., <br><br> Plaintiff, <br><br> v. <br><br> ENDOCHOICE, INC., <br><br> Defendant. | C.A. No. 15-505-LPS-CJB |
| ENDOCHOICE, INC., <br><br> Counterclaimant, <br><br> v. <br><br> MEDIGUS LTD., <br><br> Counterclaim-Defendant. | |

**DEFENDANT AND COUNTERCLAIMANT ENDOCHOICE, INC.'S
FIRST SET OF INTERROGATORIES (NOS. 1-15)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant and Counterclaimant EndoChoice, Inc. hereby requests that Plaintiff and Counterclaim Defendant Medigus, Ltd. answer in writing and under oath the following interrogatories within thirty (30) days after service of these interrogatories. The following definitions and instructions apply.

**DEFINITIONS**

1. "You," "Your," or "Medigus" refers to Plaintiff and Counterclaim Defendant Medigus Ltd., Including all of its corporate locations, and all predecessors, successors, subsidiaries, parents, assigns and affiliates, all of its past or present directors, officers, agents, consultants, and attorneys.

2. "EndoChoice" means EndoChoice, Inc., Including all of its corporate locations, and all predecessors (expressly Including Peer Medical Ltd.), successors, subsidiaries, parents, assigns and affiliates, all of its past or present directors, officers, agents, consultants, and attorneys.

3. The term "Prior Art" has the same meaning as it is used in 35 U.S.C. §§ 102 and 103, and includes any Document, thing, or activity Concerning the subject matter claimed in the Medigus Patent-in-Suit prior to its filing date and/or priority date, and any patent, printed publication, prior knowledge, prior sale or offer for sale, prior public use, or other act or event defined in 35 U.S.C. § 102, taken singly or in combination, that constitutes, describes, refers to, relates to, suggests, or motivates the subject matter claimed in the Medigus Patent-in-Suit prior to its filing date and/or priority date.

4. "USPTO" means the United States Patent and Trademark Office.

5. The term "Infringe," and any variant thereof, refers to any form of infringement actionable under United States law, including direct infringement, contributory infringement, inducement to infringe, literal infringement, and infringement under the doctrine of equivalents.

6. The term "Document" incorporates the full meaning of Rule 34 of the Federal Rules of Civil Procedure, and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a Document, all drafts of final Documents, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in Medigus' actual or constructive custody, possession, or control, regardless of the medium on which they are produced, reproduced, or stored (Including computer programs and files containing any requested information), and any recording or writing, as these terms are

defined in Federal Rule of Evidence 1001, as well as any electronic Documents Including electronic mail.  Any Document bearing marks, Including initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is a separate Document.

7.      "Entity" or "entities" means any group, association, organization, firm, corporation, joint venture, trust, or partnership, regardless of whether it is legally recognized.

8.      "Person" means any natural person or individual as well as any Entity and its agents and employees.

9.      "Related to," "Relating to," or "Concerning" means constituting, pertaining to, mentioning, commenting on, connected with, discussing, describing, identifying, analyzing, explaining, showing, reflecting, dealing with, comprising, consisting of, containing, resulting from, or regarding a particular subject in whole or in part, either directly or indirectly.

10.     "Including" means "including, but not limited to."

11.     "Communication" means any transmission of information, Including every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information of any nature whatsoever, by or to whomever, whether oral or written, whether face-to-face or by telephone, mail, personal delivery or otherwise, and Including letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

12.     "The '871 Patent" means U.S. Patent No. 6,997,871.

13.     "Accused EndoChoice Product" means any one or more EndoChoice product or component thereof accused by Medigus of infringing one or more claims of the '871 Patent.

14. "Alleged Medigus Embodying Product" means any past or present instrument or device (Including prototypes), procedure, or method that Medigus has made, used, sold, or offered to sell, which Medigus contends or believes meets all limitations of any asserted claim of the '871 Patent.

15. "Alleged Medigus Invention" means any invention Medigus contends is disclosed, described, or claimed in the '871 Patent.

16. "Complaint" means the Complaint for Patent Infringement dated June 16, 2015, and filed by Medigus in the U.S. District Court for the District of Delaware, Case No. 15-505-LPS-CJB.

17. "EndoChoice's Answer" means the December 2, 2015, Second Amended Answer and Counterclaims to the Complaint, filed by EndoChoice in the U.S. District Court for the District of Delaware, Case No. 15-505-LPS-CJB.

18. "The Present Litigation" means Case No. 15-505-LPS-CJB in the U.S. District Court for the District of Delaware.

## INSTRUCTIONS

1. The singular form of a word should be interpreted in the plural as well. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case as most appropriate.

2. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

3. The terms "any" and "all" should be given their most inclusive meaning.

4. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

5. Your response to each interrogatory shall include any and all information in Your possession, custody, or control, or in the possession, custody, or control of Your attorneys, accountants, bankers, brokers, employees, agents, subsidiaries, affiliates, and representatives, both within and outside the United States.

6. You are directed to make a due and diligent search of Your records and are directed to interview each of Your officers, directors, agents, and employees likely to have responsive information with a view toward eliciting all information that is responsive to these interrogatories.

7. If, after exercising due diligence to secure the information requested, You cannot fully answer an interrogatory or any part thereof, please state the reasons for Your inability to fully answer, answer the interrogatory to the fullest extent possible, and state what information, knowledge, or belief You have Concerning the unanswered portion.

8. If any Document or thing identified in response to any of the following interrogatories was at one time in Your possession, custody, or control, but is now lost discarded, destroyed, or is otherwise no longer in Your possession, custody, or control for any reason, then, with respect to each and every such Document, please:

   a. describe the nature of the Document;
   b. state the date of the Document;
   c. identify the Person(s) who sent or received the original or any copy of the Document, specifying its author, addressee, and all Persons to whom copies of the Document were furnished;
   d. state in as much detail as possible the subject matter and contents of the Document;

  e. state when the Document was in Your possession, custody, or control;

  f. state the last known location of the disposed Document and the last known location of any alternative copies of any lost, discarded, or destroyed Document;

  g. state the identity and location of other Documents from which information contained in the discarded or otherwise disposed of Document may be obtained;

  h. state the manner and date of the disposition, loss, destruction, or discarding of the Document;

  i. state the reason for the disposition, loss, destruction, or discarding of the Document; and

  j. state the identity of all Persons who are likely to be responsible therefor.

 9. Whenever in these interrogatories there is a request to "identify" or provide the "identity" of a Document, please either provide the production number of the document or state: (1) the identity of the person(s) who drafted the Document; (2) the identity of the person(s) who received (as addressee, "cc," "bcc," or otherwise) or approved the Document or a copy thereof; (3) the date of the Document; (4) the present location of the Document; (5) the present custodian of the Document; (6) the type of Document (e.g., letter, memorandum, tape recording, or other form of Document); and (7) a description of the Document with the specificity required to allow it to be requested by a subpoena or a request for production of Documents.

 10. Whenever in these interrogatories there is a request to "identify" a Communication, please state: (1) the date and place of such Communication; (2) the identity of each person who was present at, involved in, connected with or who participated in such

Communication; (3) the type of Communication (e.g., letter, e-mail, telegram, conference, meeting, telephone conversation); (4) the substance of such Communication; and identify each Document reflecting or comprising such Communication.

11. Whenever in these interrogatories there is a request to "identify" or provide the "identity" of a source of information, please identify: (1) the person from whom the answering party obtained the information; and (2) each Communication from such person constituting, summarizing, reflecting, or referring to the information.

12. Whenever in these interrogatories there is a request to "identify" or provide the "identity" of an individual, please provide: (1) his or her name; (2) his or her present business or home address; (3) his or her business or home telephone number; (4) his or her present or last known employer and present or last known position; and (5) the positions he or she has held with the answering party (Including the dates each such period of employment commenced and terminated, and a brief description of the responsibility of such position).

13. If the procedure for answering interrogatories as authorized by Federal Rule of Civil Procedure 33(d) is used, for each interrogatory and subpart thereof identify the specific Document(s), by production number, responsive to the interrogatory.

14. If in answering these interrogatories, You contend that either an interrogatory or a definition or instruction applicable thereto is ambiguous, identify in Your response the language You consider ambiguous and state the interpretation You are using in responding.

15. If in answering these interrogatories, You contend that either an interrogatory or a definition or instruction applicable thereto is overbroad, You shall respond to that portion of the interrogatory which You believe is unobjectionable and specifically identify the respect in which the request is allegedly overbroad.

16. If any information is withheld on the grounds that it is protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, You are requested to identify each Communication or Document for which the privilege is claimed and give all information required by applicable case law for withholding information on the basis of such privilege.

17. The interrogatories set forth herein shall be deemed continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure so as to require supplemental responses if Medigus discovers responsive information after the date of response hereto.

18. These interrogatories are submitted for the purpose of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence on subjects covered by these interrogatories or as an admission of the relevance of materiality at trial of any of the matters covered by these interrogatories.

19. The requests set forth herein shall be deemed continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure so as to require supplemental responses if Medigus discovers responsive information after the date of response hereto.

## INTERROGATORIES

INTERROGATORY NO. 1:

Describe in detail the development efforts that Relate to the Alleged Medigus Inventions, Including: (a) the date on which each Alleged Medigus Invention was first described in writing; (b) the date on which each Alleged Medigus Invention was first manufactured; (c) the date on which each Alleged Medigus Invention was first tested; and (d) the date on which each Alleged Medigus Invention was first used to perform a medical procedure in: (1) an animal, (2) a human cadaver, and (3) a live human patient.

INTERROGATORY NO. 2:

Identify all Alleged Medigus Embodying Products (by product name, project name, internal code name, model designation, product number, part number, trademark or trade name, and any other unique designation or identifier), and for each such Alleged Medigus Embodying Product: (i) state which claim(s) of the '871 Patent is embodied by each such product; (ii) explain, using a claim chart or equivalently detailed method, specifically how each such product meets each limitation of each claim; (iii) identify the person or persons most knowledgeable about the structure and function of each such product; and (iv) state the date when Medigus first began making, using, selling, and/or offering for sale of each such product.

INTERROGATORY NO. 3:

Describe in detail the development efforts that Relate to any and all Alleged Medigus Embodying Products, Including: (a) the date on which each Alleged Medigus Embodying Product was first described in writing; (b) the date on which each Alleged Medigus Embodying Product was first manufactured; (c) the date on which each Alleged Medigus Embodying Product was first tested; and (d) the date on which each Alleged Medigus Embodying Product was first used to perform a medical procedure in: (1) an animal, (2) a human cadaver, and (3) a live human patient.

INTERROGATORY NO. 4:

For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the efforts and acts by those involved to conceive of, reduce to practice, and diligently reduce to practice each claim, Including: (i) stating the dates of conception and reduction to practice for each claim; (ii) identifying each person who conceived of each claim; (iii) identifying each person who actually (as opposed to constructively) reduced

each claim to practice; and (iv) identifying all Documents that evidence the alleged conception, reduction to practice, and diligence in reducing to practice each claim.

INTERROGATORY NO. 5:

Explain in detail the facts and circumstances surrounding Medigus' Petition for Certificate of Correction, Including (i) when and how Medigus came to believe "that the examiner at the USPTO and the Applicant made a mutual clerical error by not amending 'distal end of said sheath' to --distal end of said shaft-- when it added 'a single continuous shaft including' phrase to claim 1 to obtain the allowance [of the '871 Patent]"; (ii) why Medigus did not recognize the supposed mutual clerical error (identified in the Petition for Certificate of Correction filed for the '871 Patent) at any time in:

a) 2005

b) 2006

c) 2007

d) 2008

e) 2009

f) 2010

g) 2011

h) 2012;

(iii) how the supposed mutual clerical error (identified in the Petition for Certificate of Correction filed for the '871 Patent) is confirmed when the specification of the '871 Patent is evaluated; (iv) how the correction made to claim 1 of the '871 Patent does not alter the breadth and scope of the claimed invention; and (v) the identity of each person who participated in any significant way (*e.g.*, providing technical input, reviewing or commenting on communications to

10

or from the USPTO, preparing and filing papers in the USPTO) in the preparation and/or prosecution of the Petition for Certificate of Correction filed for the '871 Patent.

INTERROGATORY NO. 6:

For each claim of the '871 Patent that Medigus contends is infringed by an Accused EndoChoice Product, describe the factual and legal bases to support such contention, Including (a) identifying each claim of the '871 Patent that Medigus contends EndoChoice has infringed, indicating whether the purported infringement is direct, induced or contributory; (b) stating whether Medigus contends the identified claims are infringed literally or under the doctrine of equivalents and describe the factual and legal bases for such contention; (c) providing a claim chart that compares each Accused EndoChoice Product to each and every limitation of each allegedly infringed claim and providing Medigus' proposed construction for each limitation Medigus contends should not be afforded its plain meaning; and (d) identifying any Document that Medigus contends supports any contentions described in its answer to this Interrogatory.

INTERROGATORY NO. 7:

Describe the legal and factual bases for Medigus' contention that EndoChoice has willfully infringed the '871 Patent, Including identifying all Documents and facts that Medigus contends supports its contention and identifying the three individuals most knowledgeable about such contentions.

INTERROGATORY NO. 8:

Describe in detail any joint development or other collaborative efforts between Medigus (Including by any Medigus employee, agent, consultant or representative) and Peer Medical Ltd. (Including by any Peer Medical employee, agent, consultant or representative) Relating to any endoscopy product and identify all Documents Relating to such efforts.

INTERROGATORY NO. 9:

Describe in detail when and how Medigus first: (1) became aware of each Accused EndoChoice Product and (2) concluded that each Accused EndoChoice Product infringed a claim of the '871 Patent, Including identifying all Documents Relating to such facts and identifying the three individuals most knowledgeable about such facts.

INTERROGATORY NO. 10:

For each asserted claim of the '871 Patent, identify and explain each and every advantage of the claimed endoscope over endoscopes described by the Prior Art and each and every problem Medigus contends is solved by the claimed endoscope.

INTERROGATORY NO. 11:

Describe in detail Medigus' corporate structure, Including identifying the relationship between Medigus and each of its predecessors, subsidiaries, successors, parents, assigns and affiliates, identifying the officers, directors, board members of each, and describing the ownership interest of Medigus in each.

INTERROGATORY NO. 12:

Describe in detail any secondary consideration of non-obviousness Medigus contends exists for each asserted claim of the '871 Patent, Including: (i) any long felt but unresolved need for the claimed invention, Including who felt the need and when; (ii) any failure of another to develop the claimed invention, Including who attempted but failed to develop the invention and when; (iii) any commercial success attributable to the claimed invention, Including any licenses to the patent; (iv) any evidence of copying of the claimed invention, Including all persons having knowledge of the alleged copying; (v) whether the claimed invention received any awards or praise in the industry; (vi) any evidence of teaching away from the claimed invention by others;

INTERROGATORY NO. 9:

Describe in detail when and how Medigus first: (1) became aware of each Accused EndoChoice Product and (2) concluded that each Accused EndoChoice Product infringed a claim of the '871 Patent, Including identifying all Documents Relating to such facts and identifying the three individuals most knowledgeable about such facts.

INTERROGATORY NO. 10:

For each asserted claim of the '871 Patent, identify and explain each and every advantage of the claimed endoscope over endoscopes described by the Prior Art and each and every problem Medigus contends is solved by the claimed endoscope.

INTERROGATORY NO. 11:

Describe in detail Medigus' corporate structure, Including identifying the relationship between Medigus and each of its predecessors, subsidiaries, successors, parents, assigns and affiliates, identifying the officers, directors, board members of each, and describing the ownership interest of Medigus in each.

INTERROGATORY NO. 12:

Describe in detail any secondary consideration of non-obviousness Medigus contends exists for each asserted claim of the '871 Patent, Including: (i) any long felt but unresolved need for the claimed invention, Including who felt the need and when; (ii) any failure of another to develop the claimed invention, Including who attempted but failed to develop the invention and when; (iii) any commercial success attributable to the claimed invention, Including any licenses to the patent; (iv) any evidence of copying of the claimed invention, Including all persons having knowledge of the alleged copying; (v) whether the claimed invention received any awards or praise in the industry; (vi) any evidence of teaching away from the claimed invention by others;

and (vii) any other secondary considerations of non-obviousness on which Medigus intends to rely, and identify all Documents that Medigus contends support its contention and identify the three individuals most knowledgeable about such contentions.

INTERROGATORY NO. 13:

State whether Medigus is seeking a reasonable royalty, lost profits, or both from EndoChoice for the alleged infringement of the asserted claims of the '871 Patent and provide a detailed explanation of the basis for all damages and other monetary remedies that Medigus is seeking in the Present Litigation, Including (1) the royalty rate and base that Medigus contends is applicable for EndoChoice's alleged use of the '871 Patent and the factual and legal bases for such contentions; and (2) if Medigus alleges lost profits, the amount of such lost profits, the legal and factual bases therefore, Including the profits per unit, costs per unit, allocation of fixed costs compared to variable costs per unit, allocation of overhead, and whether You contend that any other products' sales are convoyed with Medigus' products.

INTERROGATORY NO. 14:

Identify all licenses, offers to license, and requests to license any Medigus endoscopy product, the date of the offer or request to license, whether the offer or request was accepted or rejected, the date of execution of the license, the terms of the license, and the amount of any royalties or other payments offered, requested and/or agreed upon in connection with any licensing negotiation and/or agreement.

INTERROGATORY NO. 15:

Identify all Persons who have invested more than $100,000 in Medigus or who currently own more than 1% of Medigus' outstanding common stock.

Dated:  January 25, 2016        FISH & RICHARDSON P.C.

By: */s/ Corrin N. Drakulich*
Martina Tyreus Hufnal (No. 4771)
Warren K. Mabey, Jr. (No. 5775)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19801
Tel: (302) 652-5070
hufnal@fr.com
mabey@fr.com

Frank E. Scherkenbach
One Marina Park Drive
Boston, MA 02210-1878
Telephone:  (617) 542-5070
scherkenbach@fr.com

Todd G. Miller
12390 El Camino Real
San Diego, CA 92130
Telephone:  (858) 678-5070
miller@fr.com

Corrin Drakulich
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA  30309
Telephone:  (404) 892-5005
drakulich@fr.com

**ATTORNEYS FOR DEFENDANT/COUNTERCLAIMANT ENDOCHOICE, INC.**

14