# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 11, 2016

The Honorable Christopher J. Burke   VIA ELECTRONIC FILING
United States District Court   and HAND DELIVERY
844 North King Street
Wilmington, Delaware 19801

   Re: *Medigus Ltd. v. Endochoice, Inc.,*
     C.A. No. 15-505-LPS-CJB

Dear Judge Burke:

Plaintiff Medigus, Ltd. ("Medigus") respectfully submits this letter in response to discovery letter from defendant EndoChoice, Inc. ("EndoChoice") filed on July 7, 2016 ("EC Letter").

On June 15, 2016, the parties jointly submitted a letter to Court seeking judicial attention on discovery matters. The Defendant stated the following two matters were ripe for the Court's consideration: (1) that Plaintiff withdraw its objections to Defendant's interrogatories based on the number of subparts and provide responses to Defendant's Revised Interrogatories Nos. 1-19; and (2) that Plaintiff withdraw its objections and provide responses to Defendant's Requests for Admission Nos. 11-17. The majority of Defendant's letter of July 7, 2016, is devoted to extraneous issues. Medigus' responsive letter focuses on the issues properly before the Court, and briefly addresses the additional issues raised by EndoChoice.

**EndoChoice Is Seeking a "Do-Over" on its Interrogatories After Serving More Than 30 Interrogatories on Medigus**
EndoChoice served its "original" first set of interrogatories on Medigus on January 25, 2016. Ex. 2 to EC Letter. Medigus timely served its written responses on February 29, 2016. Ex. 6 to EC Letter. Medigus objected to EndoChoice's Interrogatory Nos. 1-5 for *inter alia* improperly containing multiple discrete subparts, each labeled as a single interrogatory. EndoChoice Interrogatory Nos. 1-4 contained four discrete subparts each, and EndoChoice Interrogatory No. 5 contained twelve discrete subparts, for a total of twenty-eight interrogatories. Interrogatory No. 7 constituted EndoChoice's thirtieth interrogatory propounded on Medigus, the maximum number of interrogatories imposed by the Court's Scheduling Order. (D.I. 26 ¶ 9(d).)

EndoChoice propounded its "original" second set of interrogatories on Medigus on February 26, 2016. Medigus timely responded on March 30, 2016, objecting to the second set of interrogatories as exceeding the maximum number of interrogatories allowed. Ex. 9 to EC Letter.

The parties exchanged written correspondence on the issue of discrete subparts. Ex. A (Letter of April 6, 2016 from M. Marion to C. Brown-Marshall). Medigus suggested as a potential

The Honorable Christopher J. Burke
July 11, 2016
Page 2

resolution to increase the number of interrogatories per side. *Id.* at p.2. Before the parties held a meet-and-confer on this issue, EndoChoice propounded "revised" versions of its first and second sets of interrogatories on April 15, 2016, six weeks after Medigus already answered the first set of interrogatories. Exs. 11 & 10 to EC Letter.

The parties first held a meet-and-confer on this issue on April 26, 2016. Ex. B (Email of May 9, 2016, from M. Marion to C. Brown-Marshall). EndoChoice only has offered two choices to Medigus to resolve this dispute either: (1) Medigus must withdraw its objections to EndoChoice's use of subparts and answer all of the originally-served interrogatories; or (2) Medigus must answer EndoChoice's "revised" interrogatories, after Medigus had already answered the originally-served interrogatories. The parties subsequently held a meet-and-confer with local counsel where EndoChoice refused to discuss any other potential resolutions to this dispute. Ex. C (Email of May 27, 2016, from M. Marion to C. Brown-Marshall). EndoChoice then requested relief from the Court.

Medigus' assessment of the number of discrete subparts from Interrogatory Nos. 1-5 followed established guidelines on the matter: "Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. ***Or, can the subsequent question stand alone? Is it independent of the first question?***" *Kendall v. GES Exposition Servs.*, 174 F.R.D. 684, 685 (D. Nev. 1997) (emphasis added).

Each of EndoChoice's Interrogatory Nos. 1-5 asked multiple, independent questions that stand alone from the remainder of the interrogatory. Medigus has included an Exhibit wherein the interrogatories have been highlighted to show each discrete subpart. Ex. D. For example, EndoChoice's Interrogatory No. 2 requested in the primary question an identification of certain Medigus products (highlighted in yellow). The remaining portions of Interrogatory No. 2 seek information unrelated to and/or independent of the identification of the Medigus products (highlighted in green, blue, and purple). All three subsequent subparts present standalone questions, independent of the primary question, and must be considered discrete subparts.

As an additional example, EndoChoice's Interrogatory No. 5 requested *inter alia* a separate response to eight different calendar years. Requests for responding to separate years are treated as discrete subparts. *See Waterbury v. Scribner*, No. 05-0764, 2008 U.S. Dist. LEXIS 53142 (E.D. Cal. May 7, 2008) ("Plaintiff's requests for the separate years from 2004 through to the present are separate and distinct. Interrogatories 2, 3 and 4 will each be treated as five separate interrogatories, for a total of fifteen (15) interrogatories.").

EndoChoice's own actions demonstrate that its originally-served interrogatories contained more than sixteen interrogatories. EndoChoice's revised interrogatories split several previously-served interrogatories into multiple interrogatories, in addition to deleting numerous subparts. EndoChoice cannot attempt to reclaim these spent interrogatories by "rewriting" its previously served and answered interrogatories, and cites no authority supporting such use of discovery.

EndoChoice's alternative demand, that Medigus must respond to the "revised" interrogatories, is unsupported by any authority and only seeks to cause undue burden on Medigus to respond to

{01128382;v1 }

The Honorable Christopher J. Burke
July 11, 2016
Page 3

effectively double the number of interrogatories permitted by the Court. EndoChoice's requested relief should be denied.

**EndoChoice is Improperly Seeking Legal Conclusions Through Requests for Admission Before Expert Discovery**
EndoChoice served its first set of requests for admission (RFAs) on Medigus on January 25, 2016. Ex. 1 to EC Letter. Medigus timely served its written responses on February 29, 2016. Ex. E. Medigus properly objected to EndoChoice's RFA Nos. 11-17 as the RFAs were seeking *inter alia* legal conclusions and discovery of expert opinion and testimony in contravention of the Court's Scheduling Order. Regardless of EndoChoice's characterization, these RFAs are seeking admissions concerning claim construction and infringement, as shown below:

- "change[d] the scope of the originally issued claim 1" (RFA Nos. 11-12);
- "enlarge[d] the scope of the originally issued claim 1" (RFA Nos. 13-14);
- "broaden[ed] in some respect the originally issued claim 1" (RFA Nos. 15-16);
- "claim 1 of the '871 Patent now includes subject matter that would not have infringed the originally issued claim 1 of the '871 Patent." (RFA No. 17).

EndoChoice's RFA Nos. 11-17 require adjudication of the meaning and of the claims of the "current" claim 1, and thus require the court to construe the claims of the '871 Patent before Nos. 11-17 can be answered.

Judges in this District have previously ruled these types of RFAs are premature before claim construction. "[R]equests [for admission] directed towards applying the claims of the patent or requiring application of the claims prior to any *Markman* ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper." *Tulip Computers v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002). Medigus has the right under the rules and orders of the Court to have expert witness testimony on claim construction and infringement, in accordance with the schedule the Court has set out. These RFAs are improper for requiring expert testimony and for attempting to circumvent the Court's scheduling order. *See Williamson v. Corr. Med. Servs.*, No. 06-379, 2009 U.S. Dist. LEXIS 41438 (D. Del. May 14, 2009) (sustaining objection to RFAs based on need for expert testimony); *see also Greene, Tweed of Del., Inc. v. Dupont Dow Elastomers L.L.C.*, No. 00-3058, 2002 U.S. Dist. LEXIS 25709 (E.D. Pa. Feb. 20, 2002) (finding RFAs requiring expert discovery as premature prior to the completion of expert discovery).[1]

EndoChoice RFA Nos. 11-17 require claim construction and expert opinion, and thus premature.

---

[1] EndoChoice's reliance on *Keithley v. The Home Store.com, Inc.*, 2008 WL 2024977 (N.D. Cal. May 8, 2008) is misplaced and inapplicable to EndoChoice's RFAs. In *Keithley*, the accused infringer refused to respond to RFAs about facts that the party's officer had already admitted to during a deposition. *Id.* at *5. As an example, an RFA asked: "Admit that Move.com receives information on real properties for sale." The corresponding deposition testimony stated: ""Q: Okay, and Move receives information on real properties for sale, of course? A: Of *course*." *Id.*

**EndoChoice's "Immediate" Need Is Instead Another Attempt at the Court-Rejected Early Summary Judgment Motion on the Validity of the Certificate of Correction**

EndoChoice's argument that Medigus must respond to its RFAs 11-17 and Interrogatory No. 5 prior to claim construction briefing is erroneous and contrary to the established procedures of the Court. Medigus has followed the schedule as adopted by the Court for discovery and claim construction. However, EndoChoice appears to still find this deficient.

The scope of the "pre-Certificate of Correction" claims is only relevant to the validity of the Certificate of Correction, and has no bearing on the claim construction of the '871 Patent. As the current action was brought after the Certificate of Correction was issued by the PTO, the certificate of correction has retroactive effect and the patent, "shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form." 35 U.S.C. § 255; *see also Roche Palo Alto LLC v. Ranbaxy Labs. Ltd.*, 551 F. Supp. 2d 349 (D.N.J. 2008) (certification of correction under § 256 is given retroactive effect under parallel language). EndoChoice's defense of intervening rights based on the Certificate of Correction is unsupported by law, and Medigus has moved to strike this claim. (D.I. 43.)

This motion to compel is another attempt by EndoChoice for an early summary judgment motion on validity of the Certificate of Correction, which the Court already rejected. (D.I. 26.) EndoChoice presents no compelling reason why the schedule should be so-changed now.

**EndoChoice's Motion to Compel on Interrogatory No. 5 Is In Contravention of the Court's Rules and Orders, Premature, and Medigus' Answer Is Not Deficient**

The July 7, 2016 submission from EndoChoice is the first time Medigus has been informed that its response to Interrogatory No. 5 is deficient. Medigus can locate no correspondence from EndoChoice about this discovery issue and counsel for Medigus cannot recall any conversations during the four meet-and-confers between the parties where this issue has been raised. EndoChoice's failure to follow any of the Court's procedure on resolving discovery disputes warrants the denial of EndoChoice's motion. Additionally, as the parties did not meet-and-confer on this topic, Medigus cannot determine what additional information EndoChoice seeks in a more "fulsome" response that would satisfy the order EndoChoice seeks.

EndoChoice's legal questions asked in Interrogatory No. 5 are premature for the same reasons why RFA Nos. 11-17 are premature, as stated *supra*. In addition, it is EndoChoice's burden to establish invalidity of the Certificate of Correction. Only after EndoChoice "has met its initial burden through its expert report" on invalidity does Medigus have to rebut EndoChoice's position, "but not vice versa." *SFA Sys., LLC v. Amazon.com, Inc.*, 2013 U.S. Dist. LEXIS 189807, at *4-5 (E.D. Tex. Apr. 11, 2013). Interrogatory No. 5 need not be answered until expert discovery is complete. *See* Fed. R. Civ. P. 33(a)(2).

Furthermore, EndoChoice crafted several keyword search terms for Medigus' document collection that would return documents responsive to this interrogatory. Medigus anticipates production of these documents today. These responsive documents will likely moot any alleged

The Honorable Christopher J. Burke
July 11, 2016
Page 5

factual deficiencies in Medigus' response to Interrogatory No. 5. EndoChoice's motion to compel a "fulsome" response to Interrogatory No. 5 should be denied.

            Respectfully,

            */s/ John G. Day*

            John G. Day (#2403)

JGD/nml
Attachments

cc: All counsel of record (via electronic mail; w/attachments)