IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDIGUS LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 15-505-LPS-CJB |
| | ) | |
| ENDOCHOICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM ORDER

At Wilmington this **19th day of July, 2016**.

**WHEREAS**, the Court has considered both Plaintiff Medigus Ltd.'s ("Plaintiff") and Defendant EndoChoice, Inc.'s ("Defendant") letter submissions, (D.I. 67; DI. 69; D.I. 71; D.I. 73), relating to the parties' pending motion seeking resolution of certain discovery disputes, (D.I. 63), as well as the parties' arguments made during the teleconference with the Court on Wednesday, July 13, 2016;[1]

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's motion be resolved as follows:

1. The first dispute addressed herein regards Defendant's Interrogatory Nos. 8-16, which Plaintiff refuses to answer due to, *inter alia*, its belief that those interrogatories exceed the maximum number of interrogatories provided for in the Scheduling Order.  (D.I. 67 at 3; D.I. 73

---

[1] In the parties' letter submissions, both Plaintiff and Defendant sought relief for the other's alleged failure to comply with discovery rules.  The Court resolved the dispute raised by Plaintiff during the July 13, 2016 teleconference, and it thus resolves only the disputes raised by Defendant in this Memorandum Order.

at 1) Plaintiff's position is premised on its belief that Defendant's Interrogatory Nos. 1-5 actually should be counted as 28 separate interrogatories. (D.I. 73 at 1)

2. Per the Court's Scheduling Order, each party may serve on the other no more than 30 written interrogatories, including all discrete subparts. (D.I. 26 at ¶ 9(d)(i)); *see also* Fed. R. Civ. P. 33(a)(1).[2] Subparts are treated as part of a single interrogatory where "they are logically or factually subsumed within and necessarily related to the primary question." *Waterbury v. Scribner*, No. 1:05-cv-0764 OWW DLB PC, 2008 WL 2018432, at *2 (E.D. Cal. May 8, 2008) (quoting *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal., 1998)); *see also Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997). To determine whether a subsequent question (i.e., a subpart) is subsumed by and related to the primary question in an interrogatory, courts consider:

> [W]hether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding [that] they are joined by a conjunctive word and may be related[.]

*Waterbury*, 2008 WL 2018432, at *2 (second alteration in original) (quoting *Kendall*, 174 F.R.D. at 685-86); *see also Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005) ("[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate

---

[2] Thus, Plaintiff's position is that Defendant reached that 30 interrogatory limit with Defendant's Interrogatory No. 7. (D.I. 73 at 1)

2

interrogatory no matter how it is designated."). This determination requires "a pragmatic approach." *Waterbury*, 2008 WL 201842, at *2.[3]

3. Here, the Court concludes that Defendant has shown why its Interrogatory Nos. 1-5 do not (as Plaintiff contends) amount to 28 separate interrogatories, or anything close to that. Thus, Defendant has not exceeded the maximum number of interrogatories set forth in the Scheduling Order.

4. As to Defendant's Interrogatory Nos. 1, 3 and 4, (D.I. 67, ex. 2 at 8-10), the subparts set out therein do not introduce "a line of inquiry that is separate and distinct" from the preceding inquiry found at the beginning of each respective interrogatory. For example, Defendant's Interrogatory No. 1 seeks Plaintiff's description of "the development efforts that Relate to the Alleged Medigus Inventions, Including" the dates for four specific events labeled as subparts (a) through (d) of the question: when each "Alleged Medigus Invention" was "first described in writing," "first manufactured," "first tested" or "first used to perform a medical procedure" on various subjects. (*Id.*, ex. 2 at 8) Despite Plaintiff's arguments to the contrary, (D.I. 73 at 1-2; *see also id.*, ex. D at 1), the four subparts simply request the dates for specific events (if they occurred) that appear "necessary to complete the details required" by the call of the question (i.e., a description of the development efforts related to Plaintiff's inventions). *Kendall*, 174 F.R.D. at 686; *see also New Park Entm't L.L.C. v. Elec. Factory Concerts, Inc.*, No. Civ.A. 98-775, 2000 WL 62315, at *4 (E.D. Pa. Jan. 13, 2000) ("The court does not view

---

[3] Once an objection to an interrogatory has been properly articulated, then the burden rests with the party seeking discovery (here, Defendant) to show that the request is proper under the Federal Rules of Civil Procedure; if it does so, then the objecting party (here, Plaintiff) must convince the court why discovery should not be had. *Harcum v. Leblanc*, 268 F.R.D. 207, 210 (E.D. Pa. 2010).

subsidiary instructions to the interrogatories as propounding additional interrogatories, but merely specifying to the defendants the type of information plaintiff is eliciting in the interrogatories.").[4] Similarly, Interrogatory No. 5 starts with a general inquiry—a request to set out "the facts and circumstances surrounding Medigus' Petition for Certificate of Correction"—and then subsequently lists specific types of information that are both logically and factually related to that inquiry (such as when and how Plaintiff concluded that a Certificate of Correction was necessary, who was involved in that decision and why Plaintiff did not earlier reach this conclusion in any of eight listed years). (D.I. 67, ex. 2 at 10-11)[5]

---

[4] This same reasoning applies to Interrogatory No. 3, (D.I. 67, ex. 2 at 9 (requesting a description of "the development efforts" relating to "any and all Alleged Medigus Embodying Products," and further specifying that the description should "Includ[e]" when the product was "first described in writing," "first manufactured," "first tested" and "first used to perform a medical procedure")), and No. 4, (id., ex. 2 at 9-10 (requesting a description of "the efforts and acts by those involved to conceive of, reduce to practice, and diligently reduce to practice each claim [allegedly infringed]," and that such description should "Includ[e]" specific information regarding each allegedly infringed claim—the date of conception and reduction to practice, the person(s) involved in such conception and reduction to practice and documents that evidence such events)).

[5] In its letter, Plaintiff offered an argument unique to Interrogatory No. 5: that a subpart's request for "a separate response to eight different calendar years" required treating each response to each separate year as a discrete interrogatory. (D.I. 73 at 2) This argument, however, ignores the fact that Defendant is not asking a separate question with respect to each year, but rather is asking for a response to one question—why Plaintiff did not earlier recognize the need for a Certificate of Correction—and requesting that the response be structured in a certain manner (i.e., by year). The answer to the first part of the interrogatory is simply the sum of the answers to each of the inquiries with regard to each of these eight specific years. *Thomas v. Yates*, No. 1:05-cv-01198-LJO-JMD-HC, 2009 WL 3273280, at *3 (E.D. Cal. Oct. 9, 2009); *cf. Waterbury*, 2008 WL 2018432, at *3 (treating requests for information relating to separate years as "separate and distinct" where the information regarding one year was factually independent from the other years). Put differently, the form of the subpart is simply one way to tease out the desired information—why Plaintiff did not recognize the need for a certificate earlier. It is likely that Plaintiff's response, (D.I. 67, ex. 6 at 16-17), would not have been substantively different had Defendant instead asked, for example, when and how Plaintiff recognized the need to submit a Certificate of Correction.

4

5.     Lastly, Defendant has acknowledged that its original Interrogatory No. 2 should in fact be considered two interrogatories, and it has re-cast it as revised Interrogatories Nos. 2-3. (D.I. 67, app. A) The Court agrees that this is appropriate in light of the caselaw set out above.[6]

6.     Therefore, by the Court's count, Plaintiff is required to answer a total of 19 interrogatories: Defendant's original Interrogatory Nos. 1 and 3-15, as well as Defendant's revised Interrogatory Nos. 2-3 and 17-19. The Court thus concludes that Defendant's motion in this regard should be GRANTED, and that Plaintiff be ORDERED to respond to each of the interrogatories referenced above to which it has so far failed to respond.[7]

7.     With respect to the dispute regarding Defendant's Requests for Admission ("RFA") Nos. 12-17 and two portions of Interrogatory No. 5, which Plaintiff refuses to answer due to, *inter alia*, its belief that these requests improperly seek legal conclusions and disclosure of expert opinion and testimony, (D.I. 67 at 1, 3; D.I. 73 at 3), Defendant's request is DENIED.[8]

8.     Under Federal Rule of Civil Procedure 36, a party may serve "a written request to

---

[6]     Though not specifically challenged here by Plaintiff, Defendant also re-wrote the former Interrogatory No. 16 and broke it out into revised Interrogatory Nos. 17-19. (D.I. 67, app. A) The Court also agrees that this was appropriate.

[7]     The parties may re-number the resulting set of interrogatories as they see fit to avoid confusion going forward.

[8]     Plaintiff states that Defendant's letter briefing is the first time Defendant expressed its belief that Plaintiff's response to Interrogatory No. 5 was deficient in this manner. (D.I. 73 at 4) Because the parties have not used the required procedures to resolve this dispute, (*id.*; *see also* D.I. 26 at ¶ 9(g)(ii)), the Court will deny Defendant's request as to Interrogatory No. 5 without prejudice to renew pursuant to such procedures. With that said, the Court believes its resolution of the dispute regarding Plaintiff's RFA Nos. 12-17 should provide helpful guidance going forward.

admit . . . the truth of any matters . . . relating to facts, the application of law to fact, or opinions about either[.]" Fed. R. Civ. P. 36(a). This Court has explained that "requests that seek legal conclusions are not allowed" (e.g., a request for a party to admit whether a patent is valid or is infringed). *Tulip Computs. Int'l, B.V. v. Dell Comput. Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) ("As a result, [for example,] requests directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper."); *see also Fulhorst v. United Techs. Auto., Inc.*, No. CIV. A. 96-577-JJF, 1997 WL 873548, at *2-3 (D. Del. Nov. 17, 1997). "The line between a request to admit a pure legal conclusion and the application of law to fact can be murky because the application of law to fact necessarily incorporates an admission as to what the law is." *Aventure Commc'ns Tech., L.L.C. v. MCI Commc'ns Servs., Inc.*, No. 5:07-cv-04095-JEG-RAW, 2008 WL 4280371, at *1 (N.D. Iowa Sept. 16, 2008).[9]

      9. The Court concludes that Plaintiff has met its burden to show that Defendant's contested RFAs improperly seek legal conclusions. Here, the RFAs require Plaintiff's admission or denial that the Certificate of Correction—by changing a claim's isolated use of one word ("sheath") to another ("shaft")—either affected the claim's scope (by changing, broadening, or enlarging it), (D.I. 67, ex. 1 at 4), or otherwise resulted in the claim's inclusion of "subject matter

---

[9] The party objecting to an RFA bears the burden of persuasion. Fed. R. Civ. P. 36(a)(6) ("Unless the court finds an objection justified, it must order that an answer be served."); *see also Shapiro v. Am.'s Credit Union*, No. 12-cv-5237 RBL, 2012 WL 5410660, at *2 (W.D. Wash. Nov. 6, 2012) ("The burden of persuasion lies on the party objecting to the requests for admission.")

that would not have infringed the originally issued claim[,]" (*id.*, ex. 1 at 5). Both the United States Court of Appeals for the Federal Circuit and this Court, however, have clearly explained that "whether a claim has been broadened through [a certificate of] correction" poses a "question of law" because answering the question "requires interpreting the old and new versions of that claim, and then determining whether the new version covers territory the old one did not." *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007); *see also S.O.I.Tec Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, 745 F. Supp. 2d 489, 506 (D. Del. 2010) (stating that whether "'the corrected claims are broader than the original claims'" is a "claim construction issue, [and thus] a question of law" (quoting *Cent. Admixture*, 482 F.3d at 1353-54)). Each challenged RFA, though sometimes phrased differently, in one way or another asks Plaintiff to do just this—to compare the "old and new versions" of the claim (that is, the claim as it existed pre- and post-Certificate of Correction) and "determin[e]" whether the change broadened the claim (or did not). Although the events relating to the Certificate of Correction pertain to an important issue in this case, Defendant should not be permitted to utilize its RFAs in this manner. Accordingly, the Court concludes that Plaintiff is justified in objecting to RFA Nos. 12-17 as improper under Rule 36, and therefore, need not respond.

10. For the reasons stated above, the Court **ORDERS** that, by no later than **July 29, 2016**, Plaintiff shall respond to Defendant's original Interrogatory Nos. 8-15, as well as to Defendant's revised Interrogatory Nos. 17-19.

11. Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly

proposed, redacted version (if necessary) of the order. Any such redacted version shall be submitted no later than **July 26, 2016**, for review by the Court, along with a detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

                                                 /s/ Christopher J. Burke
                                                 Christopher J. Burke
                                                 UNITED STATES MAGISTRATE JUDGE